IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NICKIE R. LOGAN,                :
        Plaintiff,        :    1:18-cv-2004
                                :
v.                              :    Hon. John E. Jones III
                                :
JOHN E. WETZEL,                 :
        Defendant.       :

# MEMORANDUM

## March 13, 2020

### I.    BACKGROUND

Plaintiff Nickie R. Logan ("Logan"), an inmate formerly incarcerated at the State Correctional Institution at Huntingdon (SCI-Huntingdon), commenced this action on October 5, 2018, pursuant to 42 U.S.C. § 1983, challenging the constitutionality of a legal mail policy implemented by the Pennsylvania Department of Corrections ("DOC") in September 2018. The sole Defendant is the Secretary of the DOC, John E. Wetzel. The matter is proceeding *via* an amended complaint. (Doc. 8)

Defendant Answered the amended complaint on June 5, 2019. (Doc. 34). Included as an affirmative defense is that "[u]nder Section of Title 42 U.S.C. § 1997e(a), a state prisoner, as Plaintiff is and was, must exhaust all available administrative remedies with regard to each and every issue prior to seeking relief

pursuant to 42 U.S.C. §1983 or any other federal law. The Plaintiff is prohibited and barred from proceeding on his claims." (*Id.* at p. 4).

Presently pending are the following motions: Cross motions (Docs. 37, 48) for summary judgment pursuant to Federal Rule of Civil Procedure 56, Plaintiff's motion (Doc. 41) for a preliminary injunction; and, Plaintiff's motion (Doc. 63) for sanctions. For the reasons set forth below, Defendant's motion (Doc. 37) seeking an entry of summary judgment based on Logan's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)a, will be granted. Because our analysis begins and ends with the administrative exhaustion argument raised in Defendant's motion for summary judgment, we will not consider the merits of the remaining motions.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

2

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in

3

order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

4

bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

### III. STATEMENT OF MATERIAL FACTS

DOC inmates are notified of the Inmate Grievance System policy, DC-ADM-804, in the Inmate Handbook. (Doc. 39, ¶ 7, 8). The policy is intended to deal with a wide range of issues, procedures, or events that are of concern to the inmate who is personally affected by a DOC or facility action and policy. (*Id.* at 9, 11). Because it provides formal resolution of an inmate's issues or concerns, inmates are encouraged to first try informal avenues, such as communicating with the staff at his or her institution prior to filing a grievance. (*Id.* at 10, 12). If informal avenues prove unsuccessful, the policy provides a three-step process for resolution of inmate grievances: (1) the initial grievance and staff response that must be submitted to the Facility Grievance Coordinator; (2) the appeal to the

5

Facility Manager or Superintendent and response; and (3) and the final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") and response. (*Id.* at 13).

A grievance must be submitted within fifteen working days of the event at issue and must specifically state any claims an inmate wishes to make, identify the individuals directly involved, and identify the relief the inmate is seeking. (*Id.* at 15-17). The Facility Grievance Coordinator has fifteen days to provide a decision. (*Id.* at 22). If the inmate is dissatisfied, he may appeal the decision to the Facility Manager within fifteen working days. (*Id.* at 21). The Facility Manager has fifteen working days from the date the Facility Manager received the appeal to render a decision. (*Id.* at 22). If the inmate is dissatisfied with the decision of the Facility Manager, he may then appeal to SOIGA within fifteen working days of the Facility Manger's decision. (*Id.* at 23). SOIGA has thirty working days to respond to the appeal. (*Id.* at 24). An appeal to the SOIGA is the final level of appeal from a grievance under the Inmate Grievance System policy. (*Id.* at 26).

Constance Green ("Green"), Assistant to the Superintendent and the Facility Grievance Coordinator at SCI-Huntingdon is responsible for the review, tracking and referral of all grievances to an appropriate grievance officer. (*Id.* at 27). Green

6

reviewed the grievance records and found that Logan filed two grievances related to the legal mail policy at issue. (*Id.* at 29).

On September 8, 2018, Logan filed grievance 756359. (*Id.* at 30). Green initially rejected the grievance because it exceeded the two-page limit. (*Id.* at 31, 32). On September 11, 2018, Logan filed a proper grievance contending that the legal mail policy violated his First and Fourteenth Amendment rights and complaining that his legal mail was damaged when it was opened. (*Id.* at 33). Logan requested that his original legal mail be returned, that all copies made and electronically stored be destroyed and never reproduced or reprinted, and requested that DOC staff cease all activities that caused the violation of his privileged correspondence rights. (*Id.* at 34). He did not seek monetary relief. (*Id.* at 35). On September 23, 2018, Lieutenant Younker issued a grievance response denying Logan's grievance. (*Id.* at 37). Logan did not appeal the denial of grievance 756359 to the Facility Manager. (*Id.* at 38).

On September 28, 2018, Logan filed grievance 762535. (*Id.* at 39). Logan complained that Defendant Wetzel's new legal mail policy violated his First Amendment rights. (*Id.* at 40). He requested that his "original legal mail and its contents [be] returned and the digital scanned/copies made on the security scanner/copier destroyed form the permanent memory/hard drive." (*Id.* at 41). He

7

did not request monetary relief. (*Id.* at 42). On October 11, 2018, Lieutenant Younker denied Logan's grievance. (*Id.* at 43). Logan did not appeal to the Facility Manager. (*Id.* at 45).

Logan filed two other grievances relating to the legal mail policy, but they were filed in November and January. (Id. at 46). He did not request monetary relief on either grievance. (*Id.* at 47). He did not appeal the denial of either grievance to the Facility Manager. (*Id.* at 47).

Dorina Varner ("Varner"), the Chief for SOIGA who, *inter alia*, is the custodian for inmate grievance records which are filed to Final Review with SOIGA, reviewed the grievance appeal records and found that Logan did not appeal any grievance through to SOIGA. (*Id.* at 49-51).

Logan does not dispute the facts set forth above. Rather, he contends that "the Administrative Grievance was a Dead End and unavailable at the time of the complained of Conduct of Defendant which didn't stop because Mr. Logan's Attorney's [sic] along with the same Attorney's at Civil Action 1:18-cv-2099 and 1:18-cv-02100 called Defendant and his Legal Team he continued his actions the administrative remedies until Civil Action was filed in the Court, after which, Defendant has Ceded to the very same Claims raised in those Counseled Civil Actions, and that Exhaustion was unavailable because of the exigent

8

Circumstances that Existed in Mr. Logans' [sic] situation accord (Exhibit A)." (Doc. 43, p. 5). There is no "Exhibit A" attached to the document and the Court has undertaken review of each "Exhibit A" attached to Logan's other submissions; none relate to the statement made above. (Doc. 8, p. 11; Doc. 45, p. 6; Doc. 62, p. 7).

## IV. **DISCUSSION**

The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). "A prisoner may not satisfy the ... exhaustion requirement by exhausting administrative remedies after initiating suit in federal court." *Jenkins v. Dancha*, 723 F. App'x 174, 175 (3d Cir. 2018). "If exhaustion is incomplete when an inmate files suit, dismissal is mandatory." *Ryder v. Bartholomew*, 715 F.App'x. 144, 149 (3d Cir. 2017); *see also Turner v. Sec'y Pennsylvania Dep't of Corr.*, 683 F. App'x. 180, 182 n.1 (3d Cir. 2017) ("An inmate cannot cure non-compliance with § 1997e(a) by exhausting remedies after filing his complaint."); *see also Ahmed v. Dragovich*,

9

297 F.3d 201, 209 (3d Cir. 2002) ("Whatever the parameters of 'substantial compliance' referred to [in *Nyhuis*, 204 F.3d 77–78] it does not encompass ... the filing of a suit before administrative exhaustion, however late, has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint." (footnote omitted)). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57.

While recognizing that the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors, the United States Court of Appeals for the Third Circuit recently noted that the jailors must comply with the demands of the system they created. *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). The Court went on to hold that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." (*Id.*).

It is undisputed that Logan failed to exhaust his administrative remedies prior to commencing this action and, as such, Defendant is entitled to an entry of summary judgment on that basis. We must, however, address Logan's argument that his failure to exhaust is excused because the Inmate Grievance System was a "dead-end". (Doc. 43). "The only limit to § 1997e(a)'s [exhaustion] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862 (quoting § 1997e(a)). In other words, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858 (quoting § 1997e(a)). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* (quoting *Booth*, 532 U.S. at 737–38 (internal citations and quotation marks omitted)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (*Booth*, 532 U.S. at 738).

There exists "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. "First, ... an administrative procedure is unavailable when (despite what

11

regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," such as when "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Id.* Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860, 1860 n.3 (citing *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015)).

In asserting a dead end grievance system, Logan argues that "Defendant Wetzel just took action, overexaggerated clearly, and gave Orders to subordinate Employees, of which they followed, Defendant had not intention of Stopping what he Ordered be done and went further by enacting a [sic] Official Policy on October 3, 2018, thus, Plaintiff had no avilable [sic] avenue to try and stop Defendant's actions beyond to file the Civil Action and Petition for an restraining Order or Injunction to Stop Defendant." (Doc. 43, p. 5). It is undisputed that Logan failed to exhaust all levels of review provided by the Inmate grievance System. Because he failed to proceed beyond the initial filing of grievances, his argument that the

12

administrative procedure operated as "a dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," is disingenuous. It is also unsupported by the record. Logan leapfrogged the Inmate Grievance System and proceeded directly to federal court based solely on his belief that the administrative remedy process would provide him no relief. As noted *supra*, "it is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis*, 204 F.3d at 73. Logan's course of action is precisely the conduct that the PLRA administrative exhaustion requirement seeks to curtail. The Court will grant Defendant's motion for summary judgment.

## V. <u>CONCLUSION</u>

Based on the above, Defendant's motion (Doc. 37) for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted. All other pending motions will be denied.

An appropriate Order follows.